**UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**CHARLES AMOS**                                    **CIVIL ACTION**

**versus**                                                      **NO. 04-2029**

**WARDEN N. BURL CAIN**                        **SECTION: "B" (6)**

## SUPPLEMENTAL REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE.**

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Charles Amos, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On July 26, 1995, he was convicted of second degree murder in violation of Louisiana law.[2]  He was subsequently sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[3]  The Louisiana Fourth Circuit Court of Appeal affirmed that conviction and sentence,[4] and the Louisiana Supreme Court denied petitioner's related writ application.[5]

After unsuccessfully seeking state post-conviction relief, petitioner filed the instant federal *habeas corpus* application.[6]  On November 10, 2004, the undersigned issued a report recommending that petitioner's federal application be considered timely but nevertheless dismissed without prejudice as a "mixed" petition because he failed to exhaust his state court remedies with respect to some of the claims asserted therein.[7]  On November 26, 2004, petitioner asked that he simply be allowed to withdraw his unexhausted claims.[8]  The United States District Judge then

---

[2] State Rec., Vol. III of XII, minute entry dated July 26, 1995.

[3] State Rec., Vol. III of XII, transcript of September 8, 1995, p. 3.

[4] State v. Amos, No. 96-KA-1842 (La. App. 4th Cir. May 13, 1998) (unpublished); State Rec., Vol. VI of XII.

[5] State v. Amos, 723 So.2d 974 (La. 1998) (No. 98-KO-1544); State Rec., Vol. VIII of XII.

[6] Rec. Doc. 1.

[7] Rec. Doc. 5.  However, because a subsequent federal petition would be time-barred, the undersigned further recommended that petitioner be allowed reopen the instant proceeding within ninety days after exhausting his remaining claims in the state courts.

[8] Rec. Doc. 7.

affirmed the recommendation as to the issue of timeliness[9] but referred the matter back to the undersigned for a determination as to whether petitioner should be allowed to withdraw his unexhausted claims and proceed with only the exhausted claims.[10] The undersigned determined that petitioner should be allowed to withdraw the unexhausted claims and ordered the state to respond to the exhausted claims on the merits.[11] The state has done so,[12] and the undersigned will now address those exhausted claims.

Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

---

[9] Rec. Doc. 10.

[10] Rec. Doc. 9.

[11] Rec. Doc. 11. The unexhausted claims which have been withdrawn are petitioner's claims that (1) counsel was ineffective in failing to object to a fatally defective indictment and (2) the trial court committed reversible error by appointing six attorneys to represent petitioner given the cumulative instances of the attorneys' ineffectiveness. See Rec. Doc. 5.

[12] Rec. Doc. 22.

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> Lawrence Williams testified that he is the victim's cousin and the defendant's half-cousin.  On the evening of the shooting, Williams got together with the victim, Lichecta "Sean" Butler.  Butler showed Williams a gun which the defendant had previously

- 4 -

shown to Williams.  Williams said he and Butler went out but Butler did not take the gun.  They encountered the defendant who argued with Butler about a gun.  Williams said the three got into the car, Butler driving, defendant in the front passenger seat, and Williams in the back seat.  Williams said the defendant shot Butler with an entire round of bullets then fled.  Williams sought help at a nearby house and then ran to his uncle's house to report the shooting.  He later returned to the scene.

Williams said he initially told police that he was not in the car at the time of the shooting, then later reported that he was in the car. He explained that he was scared.  Williams admitted having several criminal convictions.

Wilbert Wilson, Butler's father, testified that on the evening of the incident Williams went to Wilson's house and told Wilson that Charles had just shot Butler.  Wilson said that Williams was crying and screaming.  Wilson rushed to the scene.  Butler died the next day.

Officer Jimmy Slack was called to the scene.  He found the victim slumped in the driver's seat with multiple gunshot wounds. Officer Slack testified that Williams approached him with information that defendant was the perpetrator.  Williams told Officer Slack that he was outside the car at the time of the shooting.

Detective Dwight Deal of the homicide division testified that Williams gave a verbal statement at the scene and a formal statement later.  Williams named the defendant as the perpetrator and the defendant was later arrested.  No weapon was recovered from the defendant.

Detective Carlton Lewis, crime scene technician, and Detective Deal testified that two spent bullets were recovered from the car and blood was on the driver's seat.

Forensic pathologist Dr. Paul McGarry testified that the victim had seven gunshot wounds that could have been caused by six bullets (one bullet went through the victim's hand and possibly re-entered his head).  Dr. McGarry said the wounds entered Butler's right side, indicating that they were probably fired from the passenger seat.  He recovered two bullets from Butler's body.

Detective Kenneth Leary, expert in firearms identification and ballistics, testified that the .32 caliber bullets recovered from the

crime scene and from the victim's autopsy were fired by the same .32 caliber gun.[13]

<u>Brady Claim</u>

Petitioner claims that the prosecution suppressed favorable evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny.  Specifically, petitioner argues that the prosecution failed to disclose a supplemental police report completed by Detective Dwight Deal and a formal statement by Lawrence Williams taken by Deal on August 10, 1993.

Petitioner's claim, which was first asserted in the state post-conviction proceedings, was denied by the state district court on January 13, 2003.[14]  Petitioner's related writ applications challenging the denial of that claim were then rejected by both the Louisiana Fourth Circuit Court of Appeal[15] and the Louisiana Supreme Court.[16]  The AEDPA places severe limitations on a federal court's review of state court decisions rejecting such a claim.  The United States Fifth Circuit Court of Appeals has cautioned:

> Under AEDPA, [a federal court] do[es] not decide *de novo* whether a state prisoner has sufficiently proven a <u>Brady</u> violation. <u>See Yarborough v. Alvarado</u>, 541 U.S. 652, 665, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a de novo matter."); <u>Neal v. Puckett</u>, 286 F.3d 230,

---

[13]  <u>State v. Amos</u>, No. 96-KA-1842, at pp. 1-3 (La. App. 4th Cir. May 13, 1998) (unpublished); State Rec., Vol. VI of XII.

[14]  State Rec., Vol. III of XII, minute entry dated January 13, 2003.

[15]  <u>State v. Amos</u>, No. 2003-K-0326 (La. App. 4th Cir. May 6, 2003) (unpublished); State Rec., Vol. X of XII.

[16]  <u>State v. Amos</u>, 869 So.2d 846 (La. 2004) (No. 2003-KP-1552); State Rec., Vol. XII of XII.

236 (5th Cir. 2002) (en banc) ("We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect."). Rather, [a federal court] decide[s] whether the state court's <u>Brady</u> determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law. <u>Busby v. Dretke</u>, 359 F.3d 708, 717 (5th Cir. 2004).

<u>Dickson v. Quarterman</u>, 462 F.3d 470, 477-78 (5th Cir. 2006).

The federal law regarding <u>Brady</u> claims is well established. The United States Supreme Court has held:

A <u>Brady</u> violation occurs when the government fails to disclose evidence materially favorable to the accused. This Court has held that the <u>Brady</u> duty extends to impeachment evidence as well as exculpatory evidence, and <u>Brady</u> suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor.

<u>Youngblood v. West Virginia</u>, 126 S.Ct. 2188, 2190 (2006) (per curiam) (internal citations and quotation marks omitted).

Therefore, to prevail on this claim, petitioner must first show that the state in fact suppressed the disputed evidence. Petitioner has made that showing with respect to the supplemental police report completed by Detective Dwight Deal. At the state post-conviction hearing held in this case, Robert Jenkins, one of petitioner's trial attorneys, testified that the defense was not given a copy of that supplemental report.[17] However, with respect to the statement given by Lawrence Williams on August 10, 1993, Jenkins conceded that he was given a copy of that

---

[17] State Rec., Vol. XI of XII, transcript of November 27, 2002, at pp. 5-6.

statement during trial.[18]  If material comes to light during trial in sufficient time for defense counsel to put it to effective use, it cannot be considered to have been "suppressed" in violation of Brady and its progeny.  See, e.g., Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994); United States v. McKinney, 758 F.2d 1036, 1049-50 (5th Cir. 1985); Stogner v. Cain, Civ. Action No. 05-4317, 2008 WL 269078, at *20 (Jan. 30, 2008); Baker v. Cain, Civ. Action No. 05-3772, 2007 WL 1240203, at *5 (E.D. La. Apr. 26, 2007).

          In any event, irrespective of whether or not petitioner's claim can survive the first prong of the Brady inquiry, it is evident that it cannot survive the second prong's requirement that he establish that the allegedly suppressed evidence was "materially favorable to the accused." Youngblood, 126 S.Ct. at 2190.  With respect to that issue, it must be remembered that it is not enough that the evidence might have been *helpful* to the defense.  See, e.g., Kyles v. Whitley, 514 U.S. 419, 436-37 (1995) ("[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense.").  Rather, the withheld evidence must have been "material" in the constitutional sense.  On that point, the United States Supreme Court has held:

> Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different, although a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.  The reversal of a conviction is required upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

---

[18]  State Rec., Vol. XI of XII, transcript of November 27, 2002, at pp. 14 and 19-20.

Youngblood, 126 S.Ct. at 2190.  For the following reasons, the Court concludes that the evidence allegedly withheld here, even when considered together,[19] simply does not rise to that level.

Regarding the supplemental police report, the undersigned has reviewed that report in its entirety.  The report contains no exculpatory information.  To the extent that petitioner is arguing that the report should have been disclosed because it contains the names of other individuals interviewed during the course of the investigation, the law does not require as much.  There is no indication that those individuals had exculpatory information,[20] and the Constitution does not require the prosecution to release information regarding such non-testifying witnesses.  Wheaton v. Roe, 101 Fed. App'x 648, 649 (9th Cir. 2004); Watson v. Cain, Civ. Action No. 06-613, 2007 WL 1455978, at *8 (E.D. La. May 17, 2007).  Further, the information contained in the report was consistent with the evidence adduced at trial, and, therefore, had no value for impeachment purposes.  Because nothing in the report that was even remotely exculpatory or useful for impeachment purposes, it cannot be consider "material" and its production was not required.

The formal statement by Lawrence Williams taken by Deal on August 10, 1993, likewise cannot be considered "material" because it is neither exculpatory nor useful for

---

[19]  Although undisclosed evidence is necessarily discussed item by item, it must ultimately be considered collectively when assessing a Brady claim.  Kyles, 514 U.S. at 436.

[20]  Petitioner notes that one of the individuals, Robert Boyd, allegedly told police he had heard "9-10 shots," rather than the fewer shots referenced by other witnesses as trial.  Petitioner argues that, if Boyd heard more shots, then that would mean the victim also had a gun and that petitioner acted in self-defense after a struggle.  Boyd's estimate of the number of shots he heard leads to no such inference, and there is simply no evidence that more than one gun was involved.  For example, as Detective Kenneth Leary testified at trial, all bullets recovered from the incident were fired from the same gun.

impeachment purposes.  The statement is clearly *inculpatory*, in that Williams repeatedly says in the statement that petitioner shot the unarmed victim after a brief argument.  Further, the statement is consistent with Williams' trial testimony and, therefore, had no value for impeachment purposes.  Unless a witness' trial testimony is *inconsistent* with his pretrial statement, Brady and its progeny simply do not require disclosure of the prior statement.  Thompson v. Cain, 161 F.3d 802, 807 (5th Cir. 1998).  Therefore, even if the statement had been withheld, which it was not, there still was no constitutional violation because the statement was not "material" in the constitutional sense.

In summary, petitioner has not demonstrated that the state court decision rejecting his Brady claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects that claim.

Indictment

Petitioner's second claim is that his indictment was invalid because the grand jury and its foreperson was selected in an unconstitutional manner.  That claim is procedurally barred.[21]

---

[21]   The state overlooked this claim in its response in this proceeding and, therefore, has not raised the procedural bar.  Nevertheless, a federal *habeas* court has the discretion to raise a procedural default *sua sponte*.  Prieto v. Quarterman, 456 F.3d 511, 518 (5th Cir. 2006); Magouirk v. Phillips, 144 F.3d 348, 357-58 (5th Cir. 1998).  In the instant case, it is appropriate for the Court to raise that defense.  In its response, the state does not expressly waive the procedural default; rather, counsel's failure to address the claim and raise the procedural default was clearly inadvertent rather than a purposeful decision made on behalf of the state to forgo the defense.  Moreover, because petitioner will have notice of the application of the bar by virtue of this Supplemental Report and Recommendation and the opportunity to respond in an objection to the United States District Court Judge, petitioner is not prejudiced by the assertion of the defense.  See Prieto, 456 F.3d at 519; Magouirk v. Phillips, 144 F.3d at 359.  Accordingly, *petitioner is hereby specifically instructed that this Supplemental Report and Recommendation is notice to him that the undersigned is sua sponte raising the procedural bar and that petitioner must submit any evidence or argument concerning*

Regarding procedural bars, the United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

In the last reasoned state court judgment addressing petitioner's grand jury claim, the Louisiana Fourth Circuit Court of Appeal denied the claim based on Louisiana's rule that a challenge to an indictment is waived if not raised in a pretrial motion to quash.[22]  It is clear that Louisiana's rule that grand jury challenges are waived unless presented in a pretrial motion to quash is an independent and adequate state ground so as to support the application of a procedural bar. See, e.g., Williams v. Cain, 125 F.3d 269, 274-76 (5th Cir. 1997); see also White v. Cain, Civ. Action No. 05-3667, 2007 WL 3270770, at *13 (E.D. La. Nov. 2, 2007).

---

*that issue as part of any objections he may file to this report.*

[22] State v. Amos, No. 2003-K-0326 (La. App. 4th Cir. May 6, 2003) (unpublished); State Rec., Vol. III of XII.  The fact that the Court of Appeal alternatively rejected the claim on the merits is of no moment.  "A state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999); see also Soria v. Johnson, 207 F.3d 232, 249 n.24 (5th Cir. 2000).

"When the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner can demonstrate neither.

Petitioner cannot meet the "cause and prejudice" test in light of the United States Fifth Circuit Court of Appeals' decision in Pickney v. Cain, 337 F.3d 542 (5th Cir. 2003). In that case, petitioner's claim regarding discrimination in the selection of the grand jury foreperson was procedurally defaulted in state court because no motion to quash had been filed. The Fifth Circuit found that petitioner could not overcome the resulting federal procedural bar based on the "cause and prejudice" requirement, holding:

> We need not address whether [petitioner] has made a showing of "cause" because we are confident that he has not been prejudiced. United States v. Shaid, 937 F.2d 228, 234 (5th Cir. 1991). After reviewing the trial record, we have no doubt that, if [petitioner] had been successful in having his indictment quashed, the State of Louisiana would have sought and obtained a second indictment. ... Given the strength of the State's case, a successful grand jury challenge would have served no purpose other than to delay the trial. Accordingly, [petitioner] has failed to prove actual prejudice.

Id. at 545. Similarly, this Court has reviewed the strength of the evidence against this petitioner and reached the same conclusion. Accordingly, petitioner cannot overcome the procedural bar in this case based on the "cause and prejudice" test.

Therefore, petitioner's claim is procedurally barred unless the application of the bar will result in a fundamental miscarriage of justice. In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges

against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the

crime for which he was convicted."  <u>Finley v. Johnson</u>, 243 F.3d 215, 220 (5th Cir. 2001) (citations

omitted). The United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner
> show that it is more likely than not that no reasonable juror would
> have found petitioner guilty beyond a reasonable doubt ... in light of
> all of the evidence, including that alleged to have been illegally
> admitted (but with due regard to any unreliability of it) and evidence
> tenably claimed to have been wrongfully excluded or to have become
> available only after trial.

<u>Lucas v. Johnson</u>, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted).

Applying that standard, and again considering the substantial evidence of petitioner's guilt in this

case, the Court finds that petitioner cannot make a persuasive showing that he is actually innocent

of the charge against him.  Therefore, he cannot demonstrate that any miscarriage of justice will

result from application of the procedural bar.  Accordingly, petitioner's grand jury claim is

procedurally barred in this federal proceeding.

<u>Ineffective Assistance of Counsel</u>

Petitioner next claims that he received ineffective assistance of counsel at trial.  That

claim was denied by the state district court on January 13, 2003,[23] and petitioner's related writ

---

[23]  State Rec., Vol. III of XII, minute entry dated January 13, 2003.

applications were rejected by both the Louisiana Fourth Circuit Court of Appeal[24] and the Louisiana Supreme Court.[25]

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>See id</u>. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. <u>See Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

---

[24]   <u>State v. Amos</u>, No. 2003-K-0326 (La. App. 4th Cir. May 6, 2003) (unpublished); State Rec., Vol. X of XII.

[25]   <u>State v. Amos</u>, 869 So.2d 846 (La. 2004) (No. 2003-KP-1552); State Rec., Vol. XII of XII.

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Strickland, 466 U.S. at 697.

An ineffective assistance of counsel claim involves a mixed question of law and fact. Accordingly, this Court must defer to a state court decision rejecting such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).

In the instant case, petitioner was represented at trial by attorneys Robert Jenkins and Keith Lewis. Petitioner contends that his attorneys were ineffective in numerous respects. The Court will address each of petitioner's contentions.

- 15 -

First, petitioner argues that counsel were ineffective in failing to file pretrial motions for discovery, to suppress the evidence, and to reveal any deals offer to Lawrence Williams.  Even if the Court assumes that such motions should have been filed and that counsel performed deficiently in failing to do so, petitioner has not shown any resulting prejudice.  He has not demonstrated that any exculpatory or impeachment evidence would have revealed in discovery, that any evidence should have in fact been suppressed,[26] or that Williams was offered a deal in exchange for testifying for the prosecution.  Accordingly, petitioner's claim necessarily fails because he has not shown that there is a reasonable probability that, but for counsels' failure to file such motions, the result of the proceeding would have been different.

Second, petitioner argues that counsel were ineffective in failing to adequately interview petitioner prior to trial "to determine what witnesses he may have had or what his testimony might have been at trial."[27]  At the evidentiary hearing held on petitioner's state post-conviction application, he testified that, prior to trial, he met with Jenkins only once and never met with Lewis.[28] A petitioner asserting a claim for inadequate investigation bears the burden to provide factual support for his allegations as to what further investigation would have revealed.  See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998).  In the instant case, petitioner has provided no support whatsoever for his conclusory contention that further investigation or a more detailed

---

[26]  The court notes that defense counsel did in fact move to suppress the identification in this case, and that motion was denied.  State Rec., Vol. III of XII, minute entry date July 26, 1995, p. 2.

[27]  Rec. Doc. 1, supporting memorandum, p. 12.

[28]  State Rec., Vol. XI of XII, transcript of November 27, 2002, p. 26.

interview of him would have revealed any information beneficial to the defense.  Accordingly, this

claim also fails.  See, e.g., Rupert v. Johnson, 79 F.Supp.2d 680, 701 (W.D. Tex. 1999).

Third, petitioner argues that counsel were ineffective in failing "to subpoena,

investigate and interview [a] potential alibi witness," i.e. Earl Hagans.[29]  Even *if* petitioner informed

his attorneys that Hagans was a potential alibi witness, *a fact which has not been established*,

petitioner still has not met his burden of proof with respect to this claim.  It is clear that "complaints

of uncalled witnesses are not favored in federal habeas corpus review because allegations of what

the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th

Cir. 2002).  Therefore, to show the prejudice required to support an ineffective assistance claim

premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony

would have been favorable, but also that the witness would have testified at trial.'"  Evans, 285 F.3d

at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).  In the instant case,

petitioner has brought forth no evidence, such as an affidavit from Hagans, in support of the bald

allegation that Hagans would have testified in a manner favorable to the defense.[30]  Accordingly,

petitioner has utterly failed to meet his burden of proof with respect to this claim, and the claim

therefore fails.  See, e.g., Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001).

Fourth, petitioner argues that counsel were ineffective in failing to mount an adequate

defense.  However, petitioner has not shown that there existed a potentially viable defense which

---

[29]   Rec. Doc. 1, supporting memorandum, p. 20.

[30]   Tellingly, petitioner's post-conviction counsel elicited no such evidence from Hagans and did
not subpoena him to testify at the post-conviction evidentiary hearings.

defense counsel wrongly eschewed.  Although petitioner contends that counsel should have explored the possibility of arguing self-defense, there is not only no colorable evidence to support that theory, but that defense is also diametrically opposed to petitioner's continually stated contention that he was not involved in the murder *at all*.  Rather, petitioner contends that he was at Hagans' house at the time of the murder and that he was framed by Williams,[31] which are additional contentions for which petitioner has provided no evidentiary support whatsoever.  Therefore, he has fallen woefully short of meeting his burden to establish that his counsel performed deficiently in this regard.  Sometimes, as is evidently the case here, when representing a seemingly guilty client, counsel's only choice is to vigorously test the state's case and argue to the jury that the state has failed to carry its burden of proving that the accused is guilty beyond a reasonable doubt.  Simply because counsel were unable to fashion a nonexistent defense out of whole cloth does not mean that they performed deficiently.

Fifth, petitioner argues that counsel were ineffective in failing to interview Lawrence Williams prior to trial.  Even if the Court assumes that counsel performed deficiently in failing to interview Williams, petitioner has not demonstrated that such an interview would have revealed exculpatory information or impeachment evidence beneficial to the defense.  Accordingly, petitioner's claim necessarily fails because he has not shown that there is a reasonable probability that, but for the failure to interview Williams, the result of the proceeding would have been different.  See Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005).

---

[31]   Rec. Doc. 1, supporting memorandum, pp. 17 and 20-21.

Sixth, petitioner argues that his representation was rendered ineffective by the failure to designate one of his two trial attorneys as "lead counsel" in the case. At trial, attorneys Jenkins and Lewis acted as co-counsel in representing petitioner. There is some confusion as to which of the two, if either, was designated as "lead counsel."[32] Nevertheless, regardless of whether a "lead counsel" was formally designated, petitioner was at all times represented by one or both of the two attorneys, and it has not been established that their representation violated Sixth Amendment standards. Petitioner has not demonstrated that there is a reasonable probability the result of the proceeding would have been different if only a "lead counsel" had been formally designated, and his claim therefore necessarily fails.

Seventh, petitioner argues that counsel were ineffective in failing to allow petitioner to testify at trial. "[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." Rock v. Arkansas, 483 U.S. 44, 49 (1987). However, petitioner has offered no proof whatsoever that counsel in fact prevented him from testifying.

Petitioner does not allege and the record does not suggest that petitioner ever made known to the trial court that his counsel were refusing to allow him to testify despite his stated desire to do so. Of course, the mere fact that petitioner failed to stand up in open court and insist on testifying should not be dispositive of the issue. See United States v. Mullins, 315 F.3d 449, 455 (5th Cir. 2002); see also United States v. Araujo, 77 Fed. App'x 276 (5th Cir. 2003). Nevertheless,

---

[32] See State Rec., Vol. XI of XII, transcript of August 12, 2002, p. 2; State Rec., Vol. XI of XII, transcript of November 27, 2002, p. 13.

the Court cannot ignore the fact that petitioner has never presented *any* evidence either to the state courts or to this Court to corroborate his allegations.  Moreover, in the evidentiary hearings on this claim in state court, petitioner's trial counsel indicated that they had no recollection of petitioner expressing a desire to testify.[33]

Without more, petitioner's bare allegations are insufficient to trigger either the granting of relief or further fact-finding by this Court.  As the United States Seventh Circuit Court of Appeals noted in a case in which a petitioner alleged that he had been denied the right to testify by his counsel:

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable.  It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen.  Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." ...
> ... [A] barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him.  It just is too facile a tactic to be allowed to succeed.  Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify – to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

---

[33]   Attorney Keith Lewis testified that he did not recall any conversations on that issue and further stated:  "Well, generally, I would not be able to tell a defendant not to take the stand. Constitutionally, he has the right to defend himself in a proceeding.  But I would advise him whether or not it would be in his best interest to."  State Rec., Vol. XI of XII, transcript of August 12, 2002, pp. 8-9.  Attorney Robert Jenkins testified that he had no recollection of whether or not petitioner ever expressed as desire to testify.   State Rec., Vol. XI of XII, transcript of November 27, 2002, p. 16.

Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991); see also Baker v. Cain, Civ. Action No. 06-2039, 2007 WL 2174959, at *10-11 (E.D. La. July 26, 2007); White v. Cain, Civ. Action No, 06-1576, 2006 WL 3703240, at *4-5 (E.D. La. Dec. 11, 2006); Turcios v. Dretke, No. Civ. A. H-97-0515, 2005 WL 3263918 (S.D. Tex. Nov. 29, 2005).  This Court finds that, in light of the complete lack of evidentiary support for petitioner's underlying factual contention, he has failed to meet his burden to establish that he is entitled to relief.

To the extent that petitioner is alleging that his counsel were ineffective in failing to have him testify,[34] the Court likewise rejects that claim.  A decision whether to put a criminal defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight."  United States v. Garcia, 762 F.2d 1222, 1226 (5th Cir. 1985); see also United States v. Mullins, 315 F.3d 449, 453 (5th Cir. 2002).  Further, such a matter is inherently one of trial strategy, and the United States Supreme Court has cautioned courts not to second-guess counsel's decisions on matters of trial tactics through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.  Regarding such matters of trial strategy, the United States Fifth Circuit Court of Appeals has noted:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are *virtually unchallengeable*. Moreover, a conscious and informed decision on trial tactics and

---

[34]  At the state post-conviction hearing on this claim, petitioner testified that he advised counsel that he wanted to take the stand, but they advised against it.  State Rec., Vol. XI of XII, transcript of November 27, 2002, pp. 26-27.

> strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it *permeates the entire trial with obvious unfairness.*

St. Aubin v. Quarterman, 470 F.3d 1096, 1102 (5ᵗʰ Cir. 2006) (internal quotation marks, brackets, and citations omitted) (emphasis added), cert. denied, 127 S.Ct. 2133 (2007).

That presumption of effectiveness is particularly applicable in instances such as this one.  As the United States First Circuit Court of Appeals has noted:

> The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony.  The witness may not testify as anticipated or the witness's demeanor or character may impress the jury unfavorably and taint the jury's perceptions of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused.  Where the prosecution's case is less than compelling ..., the risk of "rocking the boat" may warrant a decision by trial counsel to forego the presentation of further defense testimony, even favorable testimony. Johnson v. Lockhart, 921 F.2d 796, 800 (8ᵗʰ Cir.1990) ("since the government has the burden of proving guilt beyond a reasonable doubt, it may not be necessary for the defense to introduce evidence to meet the constitutional requirement of effective representation"); cf. [United States v.] Natanel, 938 F.2d [302, 310 (1ˢᵗ Cir. 1991)] ("additional arguments could only impair [a] client's seemingly secure position....  In litigation, as in life, there is much to be said for such maxims as 'if it ain't broke, don't fix it,' and 'quit when you're ahead'").

Lema v. United States, 987 F.2d 48, 54 (1ˢᵗ Cir. 1993) (citations omitted).  The court continued:

> Reasonably competent trial counsel might well have determined that the best prospect for acquittal lay in discrediting the government's witnesses, rather than presenting additional testimony which could appear to legitimate the government's case or raise questions about the defense not previously suggested by the government's evidence.

Id.

The instant *habeas* proceeding is far removed from the context of the actual trial, and this Court has no mechanism available to fairly judge counsels' assessment of their own client at the time and their view of the strength of the prosecution's case as it was presented live.  Under these circumstances and in light of the foregoing law regarding the deference that must be accorded to counsels' strategic decisions, the Court declines to second-guess counsels' decision not to put petitioner on the stand.  This Court simply cannot find that counsel performed deficiently by failing to have petitioner testify at trial.

In summary, petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects those claims.

### <u>RECOMMENDATION</u>

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Charles Amos be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __22nd__ day of __February__, 2008.


**LOUIS MOORE, JR.**
**UNITED STATES MAGISTRATE JUDGE**